IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| ELIZABETH K. DALY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:14CV250–HEH |
| ) | |
| COMMONWEALTH OF ) | |
| VIRGINIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Defendants' Motion to Dismiss)

This case involves the arrest of a University of Virginia student by special agents of the Virginia Department of Alcoholic Beverage Control. The incident occurred in the parking lot of the Harris Teeter food store in Charlottesville, Virginia. Unfortunately, the agents mistook a case of canned sparkling water for illegally purchased beer.

Although the Complaint contains a number of common law claims, it is essentially a suit seeking damages for civil rights violations. The case is presently before the Court on the Defendants' Motion to Dismiss asserting that the Complaint fails to state an actionable claim or, alternatively, that the arresting agents are entitled to qualified immunity on the constitutional claims.

Both parties have filed memoranda of law supporting their respective positions. The Court heard oral argument on June 3, 2014. For the reasons that follow, the Defendants' Motion will be granted in part and denied in part.

This Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) is both informed and constrained by the well-pleaded facts contained in the complaint. The task at hand is to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, plaintiff's well-pleaded allegations are taken as true, and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Legal conclusions, however, enjoy no such deference by the reviewing court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive Rule 12(b)(6) scrutiny, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Net of legal conclusions, the Complaint alleges that on April 11, 2013, the Plaintiff, a student at the University of Virginia in Charlottesville, and two of her roommates, Anne T. Downey ("Downey") and Anna C. Wade ("Wade"), entered the Harris Teeter food store at approximately 9:54 p.m. Traveling in the Plaintiff's Chevrolet Trailblazer, they parked approximately 15 to 20 parking spaces from the entrance to the grocery store. The Complaint describes the area around the front doors of the grocery store as very well lit with numerous active security cameras. (Compl. ¶ 29, ECF No. 1, Ex. 1.)

After shopping for approximately ten minutes, Plaintiff purchased cookie dough and sherbet. The two young ladies with her purchased "jalapeño pepper jelly, cream

2

cheese, and a case of canned LaCroix sparkling water in clearly marked blue colored box." (*Id.* ¶ 30.) As they exited the store, one of the young ladies, Wade, carried the case of LaCroix sparkling water openly in her arms, "without concealing the case in any way." (*Id.* ¶ 33.) At this point in time, the Complaint alleges, "it was dark outside, but the parking lot of Harris Teeter was well-lit." (*Id.* ¶ 34.) The parking lot was almost empty. (*Id.* ¶ 35.)

As the young women proceeded through the parking lot, seven special agents of the Bureau of Alcoholic Beverage Control ("ABC") were conducting stationary surveillance from a distance of approximately 100 to 150 feet. According to the Complaint,

> On information and belief, the ABC agents had no reason to believe Harris Teeter was in violation of any laws of the Commonwealth of Virginia, including sales of alcohol to underage individuals, and, in the past fourteen years of available records, there are no reports of ABC license violations at Harris Teeter. Likewise, the ABC agents had no reason to suspect that the Plaintiff or her companions had violated ABC laws.

(*Id.* ¶ 39.)

It is further alleged in the Complaint that at approximately 10:10 p.m., Defendants Special Agents Armon Brown ("Brown") and Lauren E. Blanks ("Blanks"), "both dressed in extremely casual attire without any markings representative of a law enforcement agency or organization on their clothing, pursued the young women on foot to their car." (*Id.* ¶ 42.) In the interim, the young women entered Plaintiff's Chevrolet Trailblazer. Plaintiff occupied the driver's seat, Wade the front passenger seat, and

3

Downey the rear passenger seat. Wade placed the sparkling water on the passenger side floor. (*Id.* ¶¶ 42–43.) The Complaint details the following events that occurred next.

> 45. Plaintiff looked up from her cell phone and noticed a woman (Blanks) and a short African-American male in a Volcom t-shirt and khaki cargo shorts (Brown) approach her vehicle.
> 46. Without warning, both Blanks and Brown began to bang on the windows of the vehicle.
> 47. Brown banged on the passenger side window, shone a flashlight in the car, and requested Wade to roll down the passenger side window.
> 48. Both Blanks and Brown allegedly displayed their badges hanging from necklaces which at the time and under the circumstances were not clearly visible or readable.
> 49. Again, Brown banged on the passenger side window and shouted, "Roll down this window!"

(*Id.* ¶¶ 45–49.)

Despite attempting to lower the windows, Plaintiff and Wade were unable to do so "since the vehicle was turned off." (*Id.* ¶ 51.) Wade directed the Plaintiff to turn the car on in order to roll down the windows. Meanwhile, Agents Blanks and Brown continued to bang on the windows. (*Id.* ¶¶ 52–53.) At that point, Agent Brown began repeatedly screaming, "Do not turn on the car!" (*Id.* ¶ 54.) Next, Agents Andrew T. Covey ("Covey"), John Cielakie ("Cielakie"), Kevin D. Weatherholtz ("Weatherholtz"), and Jonathan R. Pine ("Pine") began advancing toward the automobile. These agents "were all casually dressed with no indication about their person that they were law enforcement agents." (*Id.* ¶¶ 55–56.) The agents then formed a perimeter around Plaintiff's vehicle while continuing to bang and shout commands.

Unable to determine whether they were confronted by actual police officers or "fanatical individuals," Plaintiff called 911 and requested assistance from the dispatcher.

(*Id.* ¶ 66.) Plaintiff secured her keys and started her vehicle as Agent Brown continued to scream for her not to turn the car on. (*Id.* ¶¶ 67–68.) After Plaintiff started the vehicle, Agents Brown and Covey moved to the front. "Brown began to slam the front passenger window very hard, causing Plaintiff to fear her window would shatter." (*Id.* ¶ 70.) The young women at this point were terrified and began to scream.

Agent Brown then drew his firearm and pointed it toward the ground. (*Id.* ¶ 74.) One of the passengers then allegedly screamed to Plaintiff, "They are fake badges, go, go, go." (*Id.* ¶ 75.) Plaintiff put the vehicle in drive and inched forward. "Covey struck the hood on the driver's side of the vehicle." (*Id.* ¶ 77.) Plaintiff stopped in order to avoid hitting the men positioned in front of her Trailblazer. Covey, according to the Complaint, "then jumped on the hood, landing on the driver's side closest to the front quarter panel and striking his fist on the driver's side front windshield." (*Id.* ¶ 79.) Agent Cielakie then attempted to break the passenger window with his steel flashlight causing a loud bang. (*Id.* ¶ 80.) At this point, Plaintiff panicked and accelerated her vehicle "to extract her and her passengers from the present harm and danger that existed by the unknown and unidentified ABC agents' terrifying words and actions." (*Id.* ¶ 81.) Plaintiff proceeded toward the exit of the parking lot with ABC agents pursuing her vehicle on foot. In route to the Charlottesville City police station at the Downtown Mall, Plaintiff stopped for a traffic light. While Plaintiff was sitting at the intersection, ABC agents blocked her vehicle, removed Plaintiff and Wade and placed them under arrest. They were then handcuffed and transported to the Charlottesville police station. (*Id.* ¶¶ 87, 90, 97–101, 107.) A magistrate subsequently issued felony warrants for assault and battery

on Agents Covey and Brown. Plaintiff was also charged with felony eluding and was remanded to jail. Following a hearing the next day, Plaintiff was released on bond. (*Id.* ¶¶ 110–113, 121.)

On June 27, 2013, on motion of the Commonwealth's Attorney for the City of Charlottesville, all three charges against Plaintiff were nolle prossed. The records of arrest were expunged by the Circuit Court for the City of Charlottesville on October 22, 2013. (*Id.* ¶¶ 123–124.) This lawsuit followed.

The Complaint in this case consists of twelve counts encompassing an array of related activity occurring on the evening of April 11, 2013. The central claims are subsets of 42 U.S.C. § 1983.[1] Technically, as discussed below, Counts One and Three are multiplicitous in that they state a single cause of action—a violation of Plaintiff's Fourth Amendment rights in two separate counts.

Count One alleges malicious prosecution by Agents Covey, Brown, Blanks, and Taylor in obtaining warrants for Plaintiff's arrest. Based on essentially the same conduct, Count Two contends that the Agents named in Count One conspired to violate Plaintiff's civil rights by seeking warrants for her arrest without probable cause. Count Three asserts that Agents Covey and Taylor caused the Plaintiff to be falsely arrested. Counts Five and Six claim that the Commonwealth of Virginia sanctioned the unlawful law enforcement customs and practices of the Defendants (Count Five) and failed to properly train the Defendant agents (Count Six).

---

[1] To plead a plausible claim of violating her Civil Rights, 42 U.S.C. § 1983, Plaintiff must allege that the Defendants, while acting under color of state law, deprived her of her Fourth Amendment rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The balance of the Complaint is comprised of common law claims. Count Four alleges common law malicious prosecution, naming Agents Covey, Brown, Blanks, and Taylor. Counts Seven through Twelve assert claims of assault and battery against each of the Defendant agents, except Taylor. According to the Complaint, all of the assault and battery claims are predicated on various agents either intentionally banging on the passenger's side window of Plaintiff's vehicle and shouting at her without cause, jumping on the vehicle's front hood and pounding the front windshield, or attempting to break a window with a steel flashlight.

With respect to Count One, the Fourth Circuit stated unequivocally in *Lambert v. Williams* that "§ 1983 does not empower a plaintiff to bring a claim for malicious prosecution *simpliciter*. What is conveniently referred to as a §1983 malicious prosecution action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." 223 F.3d 257, 259 (2000) (internal quotation marks omitted). Section 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Consequently, common law malicious prosecution is not itself redressable under § 1983. *Id.*; *Lambert*, 223 F.3d at 260.

Although it is not an independent cause of action, the prevailing view among federal circuit courts of appeal is that malicious prosecution claims under § 1983 are properly construed to be a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort, i.e., the requirement that the prior

7

proceeding terminated favorably to plaintiff. *Lambert*, 223 F.3d at 260, 262 (citing opinions of five circuit courts of appeal). *See also Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996) (merging false arrest and malicious prosecution claim as a single Fourth Amendment violation).

This Court will therefore combine the allegations in Counts One and Three into a unified claim under § 1983 of violating Plaintiff's Fourth Amendment rights. However, given the current posture of the case, particularly the separate arguments on Counts One and Three in counsel's briefs addressing these issues, the Court will treat Counts One and Three as distinct but related claims in its Rule 12(b)(6) analysis. Whether viewed independently or collectively, the Court reaches the same conclusion.

In reviewing the Complaint for facial sufficiency, this Court must parse out the legal conclusions and the enriching commentary. As the United States Court of Appeals for the Fourth Circuit pointed out in *Francis v. Giacomelli*, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). At this stage of the proceedings, Plaintiff is entitled to all reasonable inferences that flow from well pleaded allegations. *T.G. Slater*, 385 F.3d at 841. This standard of review applies as well to the defense of qualified immunity. *Crawford-El v. Britton*, 523 U.S. 574, 594–95 (1998) (rejecting heightened burden of proof standards where qualified immunity is defense). This Court is aware of the Supreme Court's admonition that qualified immunity should be addressed at the

earliest possible stage—if the record before the Court is sufficient. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Turning to the adequacy of the Complaint, Count One alleges that Agents Covey, Brown, Blanks, and Taylor violated Plaintiff's civil rights by knowingly and maliciously causing her prosecution without probable cause. Specifically, Plaintiff contends that Agents Covey, Brown, and Blanks, acting in concert, with actual malice, anger, and personal spite out of embarrassment of their own intentional and grossly negligent actions, purposely concealed important material facts with the motive to at least in part conceal their own misconduct in presenting a complaint to the magistrate supporting the issuance of a warrant for plaintiff's arrest. (Compl. ¶¶ 149–151.) Plaintiff further maintains in her Complaint that Agents Covey, Brown, and Blanks were acting under the direction of their supervisor, Agent Taylor.[2] (Compl. ¶¶ 142–144.) Plaintiff emphasizes that the criminal complaint omitted a number of purportedly relevant facts, i.e., the agents were not in uniform; that a firearm was brandished; that the passenger side window was struck with a steel flashlight; that an agent jumped on the hood and punched the driver's windshield; that the young women were really scared; and that Plaintiff and companions did not possess alcohol. (*Id.* ¶ 148.)

Of particular significance to Plaintiff is her allegation that the agents failed to mention to the magistrate that she and her companions were unaware that the agents

---

[2] A person who, acting under color of state law, directly and intentionally causes an arrest is as liable as the officer carrying it out. *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (citing *Berg v. County of Alleghany*, 219 F.3d 261, 272 (3d Cir. 2000)). This includes a supervisory law enforcement officer. *Randall v. Prince George's County, Md.*, 302 F.3d 188, 203 (4th Cir. 2002).

approaching her car were law enforcement officers. (*Id.*) Plaintiff contends that the badges hanging from chains on the agents' necks were not clearly visible or readable under the circumstances. (*Id.* ¶ 48.)

The Defendant agents challenge the sufficiency of Count One on several fronts and assert that they are entitled to qualified immunity as to all constitutional claims. They stress that the pivotal question is whether they acted under circumstances which could reasonably have lead them to believe that Plaintiff had committed a criminal offense. *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988). Moreover, "[w]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985) (citations and internal quotation marks omitted).

The Defendants also correctly note that a law enforcement officer need not address affirmative defenses in applying for an arrest warrant. Nor must the applying officer particularize every factual detail. *See United States v. Blauvelt*, 638 F.3d 281, 288–90 (4th Cir. 2011). Omission of immaterial information from an affidavit does not invalidate a warrant as long as the information which was included still establishes probable cause. *See United States v. Gary*, 528 F.3d 324, 327–28 (4th Cir. 2008). On the other hand, a law enforcement officer applying for an arrest warrant may not knowingly present false information to the issuing magistrate. *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991).

Although when viewed in the light most favorable to the Plaintiff, Count One appears to state a plausible claim under 42 U.S.C. § 1983, particularly when considered in the context of the allegations in Count Three, the underlying analysis is hampered by the record at hand. Neither party has included a copy of the criminal complaint underlying the warrant for Plaintiff's arrest as an exhibit to the pleadings. Furthermore, many of Plaintiff's allegations concerning deficiencies in the Complaint are based upon information and belief, rather than actual reference to the criminal complaint's content.[3] Alternatively, the Defendants argue that even if they lacked probable cause, their actions were objectively reasonable and they are therefore entitled to qualified immunity.

"Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Washington v. Wilmore*, 407 F.3d 274, 281 (4th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citation omitted). The determination of whether a right is clearly established hinges on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001)

---

[3] As the United States Court of Appeals for the Second Circuit explained in *Arista Records LLC v. Doe*, "[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." 604 F.3d 110, 120 (2d Cir. 2010) (citations and internal quotation marks omitted).

11

(citation omitted). So long as qualified immunity does not turn on disputed facts, "whether the officer's actions were reasonable is a question of pure law." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citation omitted). "[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Tobey*, 706 F.3d at 393–94 (4th Cir. 2013) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)). As is the case here, however, qualified immunity is peculiarly well-suited for resolution at the summary judgment stage with the benefit of a more fulsome record. *See Willingham v. Crooke*, 412 F.3d 553, 558–59 (4th Cir. 2005); *Torchinsky*, 942 F.2d at 261 (citation omitted).

Although Plaintiff's civil rights claim in Count One has several elements, the core contention is that the agents lacked probable cause to initiate her prosecution. Neither party disputes that an arrest without probable cause violates the Fourth Amendment. At this stage, the central dispute is whether the Complaint sufficiently demonstrates sufficient indicia of probable cause to render the agents' belief in its existence objectively reasonable. As the Defendants correctly point out, "to address [Plaintiff's] § 1983 claim, [the Court] need not formally resolve, ... whether [Plaintiff was] arrested without probable cause. ... [The Court] need only determine whether [the agents] ... acted with the objective reasonableness necessary to entitle [them] to qualified immunity." *Torchinsky*, 942 F.2d at 260.

Because the Court is bound to construe the allegations in Plaintiff's favor, it must deny qualified immunity at this stage. The Court will be in a far better position to assess

12

the agents' actions and determine whether they were objectively reasonable on a more fully developed record.[4]

Count Two of the Complaint, alleging conspiracy to commit malicious prosecution, is premised on the same factual predicate as Count One. In essence, Plaintiff contends that Agents Covey, Brown, Blanks, and Taylor acted collectively in presenting false or misleading information to the magistrate. Unlike actions brought under 42 U.S.C. § 1983, claims arising under 42 U.S.C. § 1985(3), as in this case, must be based on acts "motivated by a specific class-based, invidiously discriminatory animus to [] deprive the plaintiff of the equal enjoyment of rights secured by the law to all." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). *See also United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983). The Fourth Circuit in *Buschi v. Kirven* provided further illumination of what is required to satisfy the requirement of a class-based discriminatory animus. "[U]nder this section the class must possess the discrete, insular and immutable characteristics comparable to those

---

[4] Count Four alleges a closely analogous claim of common law malicious prosecution. A prima facie case of malicious prosecution under common law requires proof of "(1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant[ ] [acted with] malice." *Lambert* 223 F.3d at 260. Plaintiff contends that Agents Covey, Brown, Blanks, and Taylor "cooperat[ed] actively" in obtaining warrants for her arrest. (Compl. ¶ 187.) She further maintains that the "agents acted with actual malice, out of embarrassment and disgrace for their own intentional and negligent acts and charged the Plaintiff with three felonies and did so out of anger and personal spite, with a desire to injure Plaintiff, and with a conscious disregard to the rights of Plaintiff." (*Id.* ¶ 195.)
    This Court's analysis and conclusions with respect to this claim track that of Count One. In addition, the Complaint alleges, and the unrebutted factual assertions support, Plaintiff's claim of malice. The final element—favorable termination of the criminal proceedings—does not appear to be in dispute. On the present record, the Defendants' Motion to Dismiss Count Four will be denied.

characterizing classes such as race, national origin and sex." 775 F.2d 1240, 1257 (4th Cir. 1985) (citation and internal quotation marks omitted). *See also United Brotherhood of Carpenters & Joiners*, 463 U.S. at 836 (concluding that the predominant purpose of § 1985(3) was to combat racial animus).

As Plaintiff appeared to concede at oral argument, Count Two fails to state a plausible claim of class-based discriminatory animus. Her belated assertion in her opposition memorandum that Defendants' law enforcement actions targeted "young, white sorority girls" falls wide of the mark—legally and factually. (Pl.'s Mem. in Opp'n at 27, ECF No. 10.)

Progressing to Count Three (merged with Count One), this claim, brought under 42 U.S.C. § 1983, focuses on the initial encounter between Plaintiff and Agents Covey and Taylor as she exited the Harris Teeter. Plaintiff alleges that her seizure was without probable cause or reasonable suspicion that she had violated any laws of the Commonwealth of Virginia, and that the agents had reason to believe that Plaintiff did not know that the individuals surrounding her vehicle were ABC agents. (Compl. ¶¶ 176–178.) Plaintiff maintains that simply observing a young lady carrying a case of an apparently unidentifiable beverage was insufficient to spawn a reasonable suspicion that she had unlawfully purchased alcohol. Moreover, notwithstanding Plaintiff's inability—or refusal—to lower her car window when the causally-dressed agents confronted her, her actions did not warrant either her seizure or the demonstration of force that followed. According to the Complaint, this included six agents surrounding her vehicle, shouting commands, and pounding on the automobile. In addition, one agent brandished a

firearm, another attempted to break the passenger side window with a steel flashlight, and another jumped on the hood and punched the driver's windshield. (*Id.* ¶ 182.)

The Defendants, both in their supporting memoranda and at oral argument, claim that the agents had reasonable suspicion that Plaintiff and her friends possessed beer. They add, however, that the agents did not need suspicion to approach Plaintiff to simply ask her questions or request identification, relying on *Florida v. Bostwick*, 501 U.S. 429, 434 (1991). In *Florida v. Bostwick*, the Supreme Court held that the Fourth Amendment is not implicated in a "police-citizen encounter" when law enforcement officers approach someone in a public place and speak with him or her, or ask the person to answer a few questions. *Id.* at 439–40. However, the Fourth Amendment is implicated once an individual has been "seized," that is when the subject is no longer "free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (citation omitted). A police-citizen encounter can escalate to a seizure, warranting protection under the Fourth Amendment when, in view of the totality of the circumstances surrounding the stop, a reasonable person would not feel free to leave or otherwise terminate the encounter. *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002) (citation omitted).

As described in the Complaint, the initial observations of the ABC agents in this case would certainly have warranted a police-citizen encounter to more closely examine the beverage carton. To justify an investigative stop, which permits an officer to stop and briefly detain a person for more in-depth questioning, requires "reasonable suspicion" based on articulable facts that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Articulable suspicion is a composite of common sense, specialized

15

training, and practical experience. *United States v. Johnson*, 599 F.3d 339, 343–45 (4th Cir. 2010). However, as the Supreme Court noted in *United States v. Arvizu*, the level of suspicion must be more than a "mere hunch." 534 U.S. 266, 274 (2002).

The level of force employed by the agents, as recounted in the Complaint, reveals more than a consensual encounter. To find articulable suspicion on the strength of the pleaded facts would vest ABC agents with a broad license to not just stop and question, but coercively detain every young person exiting a store with an unidentifiable beverage container. The level of force particularized in the Complaint is more suggestive of a seizure requiring probable cause.[5] The agents' version of the events may well cast events in a different light, but the Complaint governs at this stage.

Viewing the well-pleaded facts in the light most favorable to the Plaintiff, Count Three states a plausible claim for false arrest under 42 U.S.C. § 1983. The Defendants argue alternatively that even if Plaintiff states a colorable claim for false arrest, they are entitled to qualified immunity. Defendants point out that it is well settled that "police officers are entitled to qualified immunity from civil damages in Fourth Amendment cases where it is established that a reasonable officer *could have* believed his action was lawful, even if it was not." (Defs.' Mem. Support Mot. Dismiss at 12, ECF No. 4.) "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Even reviewing the facts under the lens of a reasonably trained law

---

[5] The false arrest claim in what is presently Count Three does not include the events occurring after Plaintiff started her vehicle and progressed forward. Portions of those events are embraced in Count One in its current form.

16

enforcement officer, this Court cannot conclude, based on the present record, that Defendants could have believed that their actions were lawful. Therefore, Defendants' claim of qualified immunity must be denied at this stage of the proceedings.

As announced during oral argument, Counts Five and Six, alleging unlawful custom or practice and failure to train, respectively, in violation of 42 U.S.C. § 1983, will be dismissed with prejudice. The Commonwealth is not a person and is therefore not amenable to suit under § 1983. As the Supreme Court concluded in *Haywood v. Drown*, "a plaintiff seeking damages against the State . . . cannot use § 1983 as a vehicle for redress because a state is not a 'person' under § 1983." 556 U.S. 729, 734 n.4 (2009). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

The balance of the Complaint alleges individual claims of common law assault and battery against six of the ABC agents. As the Supreme Court of Virginia restated in *Koffman v. Garnett*, assault and battery are two independent torts. 265 Va. 12, 16 (2003).

> The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery. . . . The tort of battery is an unwanted touching which is neither consented to, excused, nor justified. Although these two torts "go together like ham and eggs," the difference between them is "that between physical contact and the mere apprehension of it. One may exist without the other."

*Id.* (citations omitted). *See also McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994).

17

In *Jones v. Commonwealth*, the Supreme Court of Virginia provided further explanation of the common law tort of battery. "Battery is the actual infliction of corporal hurt on another (e.g., the least touching of another's person), wilfully or in anger, whether by the party's own hand, or by some means set in motion by him." 184 Va. 679, 682 (1946).

To facilitate analysis, the assault and battery counts can be divided into two discrete categories. The first involves Agent Blanks (Count Eight), Agent Pine (Count Eleven), and Agent Weatherholtz (Count Twelve), who "[i]ntentionally banged on the passenger's side window of Plaintiff's vehicle and shouted at Plaintiff without cause . . . and placed Plaintiff in reasonable apprehension of bodily harm." (Compl. ¶¶ 228, 230, 238, 264, 265, 272, 273.) The second category encompasses more forceful action by several of the ABC agents. Count Seven asserts that Agent Brown not only banged on the passenger's side window, (*id.* ¶ 228), but also "began to slam the front passenger window very hard, causing Plaintiff to fear her window would shatter." (*Id.* ¶ 70.) Count Nine alleges that Agent Covey, in addition to banging on the driver's side hood of Plaintiff's vehicle, "intentionally and/or with gross negligence jumped on the driver's side hood of Plaintiff's vehicle and forcibly and violently struck his fist on the driver's side front windshield, immediately in front of Plaintiff." (*Id.* ¶ 246.) In Count Ten, Plaintiff contends that Agent Cielakie, aside from banging on the passenger's side window,

> unlawfully, intentionally, and/or with gross negligence, and in violation of ABC General Order 05, employed as a means of force his steel flashlight in an attempt to break Plaintiff's passenger's side window without reason to

18

>believe that the imminent threat of death or serious physical injury existed and with other reasonable options available.

(*Id.* ¶¶ 255, 256.)

Even reviewed in the light most favorable to Plaintiff, as required at this stage, Counts Seven through Twelve fail to plead a plausible claim of battery. To support an actionable claim of battery under Virginia law, there must be physical contact by the assailant. *Jones*, 184 Va. at 682; *see Hardy v. Commonwealth*, 58 Va. 592, 601 (1867). The Complaint reveals none. However, if the complaint pleads a viable claim of assault, that component can survive facial challenge as a freestanding tort.

Despite conclusory language to the contrary, banging on the passenger's side window and shouting at Plaintiff may have been unsettling, but falls short of plausibly placing Plaintiff in reasonable apprehension of bodily harm. Accordingly, Counts Eight, Eleven, and Twelve will be dismissed without prejudice.

The alleged actions of Agents Brown, Covey, and Cielakie are, however, more than adequate to withstand Rule 12(b)(6) scrutiny as to the assault claims. Agent Covey's alleged jumping on the hood of the vehicle and violently striking the windshield with his fist could plausibly place Plaintiff in fear of bodily harm, as could Agent Brown's alleged forceful slamming of the front window. Similarly, Agent Cielakie's alleged attempt to break the side window with his steel flashlight could reasonably engender apprehension of bodily injury. Therefore, Defendants' Motion to Dismiss will be denied as to the assault claims alleged in Counts Seven, Nine, and Ten.

Based on the foregoing, Defendants' Motion to Dismiss will be granted as to Count Two (Conspiracy to Commit Malicious Prosecution, 42 U.S.C. § 1985); Count Five (Unlawful Custom or Practice, 42 U.S.C. § 1983); Count Six (Failure to Train, 42 U.S.C. § 1983); Counts Eight, Eleven, and Twelve (Assault and Battery—Blanks, Pine, and Weatherholtz); and Counts Seven, Nine, and Ten, in part (Battery only—Brown, Covey, Cielakie).

Defendants' Motion to Dismiss will be denied with respect to Count One (Malicious Prosecution, 42 U.S.C. § 1983); Count Three (False Arrest, 42 U.S.C. § 1983); Count Four (Common Law Malicious Prosecution); and Counts Seven, Nine, and Ten, in part (Assault only—Brown, Covey and Cielakie).

In addition, Count Three will be merged into Count One to allege a single unified action encompassing the Fourth Amendment violations articulated in those counts. To facilitate future proceedings, Plaintiff is directed to file an amended Complaint consolidating Counts One and Three only. Any additional amendments, other than deleting dismissed counts or claims, will require leave of court.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 17, 2014
Richmond, VA